UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IBEW LOCAL 595 TRUST FUNDS, ET AL., | No. C-10-03407 JCS |
| Plaintiffs, | **REPORT AND RECOMMENDATION RE APPLICATION FOR DEFAULT JUDGMENT BY COURT [Docket No. 14]** |
| v. | |
| BARRY FOSTER, ET AL., | |
| Defendant. | |

## I. INTRODUCTION

In this ERISA enforcement action, Plaintiffs bring an Application for Default Judgment by Court (the "Motion") seeking to collect unpaid employee benefit contributions, liquidated damages and interest on unpaid or delinquent contributions, as well as attorneys' fees and costs. Defendant has not appeared in this action, and the Clerk entered default on October 27, 2010 pursuant to Fed. R. Civ. P. 55(a). For the reasons stated below, it is recommended that the Court GRANT Plaintiffs' Motion for default judgment. Plaintiffs should be awarded $42,216.39 in unpaid contributions, $3,618.78 in liquidated damages, $10,396.86 in interest, $6,976.00 in attorneys' fees, and $487.68 in costs.

## II. BACKGROUND

This action was brought by a number of trust funds ("the Trust Funds"),[1] a collection agent for the Trust Funds ("Collection Agent"),[2] and two individuals,[3] in their capacity as trustees of the Trust Funds and Officers of the Collection Agent. The Trust funds are multi-employer benefit plans as defined by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1002(3). First Amended Complaint ("FAC"), ¶ 5. Defendant Barry Foster Electrical Contractor ("BFEC") is a sole proprietorship owned by Defendant Barry Foster, who is also BFEC's alter ego.[4] *Id*. ¶¶ 8, 10. BFEC is an employer within the meaning of ERISA, 29 U.S.C. § 1002(5). *Id*. ¶ 8.

The Trust Funds were created under a collective bargaining agreement ("CBA") between International Brotherhood of Electrical Workers ("IBEW") Local 595 and Alameda County Branch, Northern California Chapter, National Electrical Contractor's Association. *Id*., ¶ 1; *see also* Declaration of Bonnie Maraia in Support of Motion for Default Judgment ("Maraia Decl."), ¶ 2 & Ex. A (excerpts of CBA establishing Trust Funds). Under the CBA, electrical industry employers are obligated to make contributions to the Trust Funds, which provide the fringe benefits set forth in the CBA, such as health insurance, vacation pay and pension funds. FAC ¶ 1. Plaintiffs allege that Defendant, as a signatory to the CBA, was obligated to make contributions to the Trust Funds. *Id*., ¶ 8; *see also* Declaration of Victor Uno in Support of Plaintiff's Application for Default Judgment, ¶ 5 & Ex. B (Letter of Assent, dated April 9, 2008, signed by Barry Foster for BFEG, agreeing to be bound by CBA).

Under the terms of the CBA, employers must report, on a monthly basis, for each hour worked by their employees and make contributions to the various trust funds (the "Trust Funds") based on those hours. FAC ¶¶ 12-13; *see also* Declaration of Victor Uno in Support of Plaintiff's

---

[1] The Plaintiff Trust Funds are as follows: 1) IBEW Local 595 Health and Welfare Trust Fund; 2) IBEW Pension Trust Fund; 3) IBEW Local 595 Money Purchase Pension Trust Fund; 4) IBEW Local 595 Vacation Fund; 5) IBEW Local 595 Apprentice and Training Fund; 6) Electrical Contractor's Trust; 7) Contractors Administration Fund; and 8) Labor Management Cooperation Fund.

[2] Plaintiff Collection Agent is Electrical Industry Service Corporation.

[3] The individual Plaintiffs are Victor Uno and Don Campbell.

[4] Hereinafter, the Court refers to Barry Foster and BFEC collectively as "Defendant."

2

Application for Default Judgment ("Uno Decl."), ¶ 3 & Ex. A (CBA sections incorporating obligations to make payments to specific trust funds); Maraia Decl., ¶ 2 & Ex. 1 (excerpts of IBEW Local 595 Health and Welfare Trust), § 3.1. Payments become delinquent if they are not paid by the 20th day of the month following the month for which the contributions are made. FAC ¶ 14; Maraia Decl., ¶ 3 & Ex. 1, § 3.1. Liquidated damages are assessed on delinquent contributions at a rate of 10%. Maraia Decl., Ex. 2 (June 19, 2007 notice sent by Trustees of Fund sent to signatory employers, including Defendant).[5] The collective bargaining agreement also provides for interest on unpaid contributions at a rate of 12% per annum simple interest. FAC ¶ 16; Maraia Decl., Ex. 2. Finally, the collective bargaining agreement provides for an award of attorneys' fees and costs incurred in collection of delinquent contributions. Complaint at ¶ 18; Maraia Decl., Ex. 1 (excerpts of IBEW Local 595 Health and Welfare Trust), § 3.2 (providing for payment of "any and all reasonable costs of whatever nature in collecting delinquent contributions").[6]

On August 3, 2010, 9, Plaintiffs filed a complaint under 29 U.S.C. §§ 1132(d)(1) and 1145 alleging that Defendant breached the CBA by failing to make required contributions on a timely basis. In the original complaint, Plaintiffs alleged that Defendant had failed to make full and timely contributions from August 2009 to the present. Complaint ¶ 17. Plaintiffs set forth specific amounts due through July 20, 2010. *Id*. ¶ 18. In an amended complaint, Plaintiffs alleged that Defendant had failed to make full and timely contributions from April 2008 to the present and provided updated amounts due, through September 22, 2010. FAC ¶¶ 17-18.

Plaintiffs now bring a Motion for Default Judgment seeking entry of default judgment and an award of unpaid contributions, liquidated damages on the late contributions, interest and attorneys' fees and costs.

---

[5] In their amended complaint, Plaintiffs erroneously alleged that liquidated damages are 20% of the delinquent contribution. FAC ¶ 16. Although consistent with the CBA, *see* Maraia Decl., Ex. 1, § 3.2, the rate of liquidated damages was lowered to 10% in 2007, as set forth in the notice cited above.

[6] Although Plaintiffs have submitted the provisions governing delinquent contributions as to only one of the Trust Funds, the Maraia Declaration states that "[t]he procedures set forth therein are applicable to each of the Funds." Maraia Decl., ¶ 3.

## III. ANALYSIS

### A. Standard Governing Default Judgment

#### 1. Discretion in Awarding a Default Judgment

Plaintiffs have applied for a default judgment in this action on the basis that Defendants have failed to appear after valid service. Under Federal Rule of Civil Procedure 55(b)(2), the court may enter a default judgment where the clerk, under Rule 55(a), has already entered the party's default based upon a failure to plead or otherwise defend the action. The district court's decision to enter a default judgment involves some discretion. *Lau Ah Yew v. Dulles*, 236 F.2d 415 (9th Cir. 1956) (affirming district court's denial of default judgment). The court is free to consider a wide range of factors in deciding whether to enter a default judgment, including: "(1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986); *see also* Wright & Miller, *Federal Practice and Procedure*, Civil § 2685. In deciding whether to enter a default judgment, the Court may also consider whether there would be grounds for setting aside the judgment if the defaulting party were to seek such relief. *Id.*

#### 2. Liability as to "Well-Pleaded" Allegations

Where a default judgment is deemed appropriate, the factual allegations of the complaint, except those relating to damages, are taken as true. *Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir. 1977) (citing *Pope v. United States*, 323 U.S. 1, 12 (1944)). So long as the allegations in the complaint are "well-pleaded," liability is established as to those allegations by the default. *Trans World Airlines Inc. v. Hughes*, 308 F. Supp. (D.C.N.Y. 1969), *modified on other grounds*, 449 F.2d 51, *rev'd on other grounds*, 409 U.S. 363 (1973).

### B. Liability

Plaintiff brings this action under ERISA. Under ERISA, a trustee is authorized to bring a civil enforcement action to recover unpaid contributions from an employer who is bound to make such contributions under a collective bargaining agreement. *See* 29 U.S.C. § 1132(a)(3) (authorizing

4

fiduciary of employee benefit plan to bring a civil action to enforce provisions of ERISA); § 1145 (providing that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collective bargaining agreement shall . . . make such contributions"); § 1002(14) (defining fiduciary as including trustees).

In support of their ERISA claim, Plaintiffs alleges that Defendant entered into a collective bargaining agreement requiring it to make contributions to the Trust Funds on behalf of its covered employees. Plaintiffs further allege that Defendant failed to pay contributions while bound by the collective bargaining agreement. These allegations state a valid claim under ERISA. In addition, Plaintiffs have supported the claim by providing: 1) copies of the relevant provisions of one of the trust agreements, along with a declaration stating that the relevant provisions of the other trust agreements are the same; 2) relevant provisions of the CBA; 3) Defendant's signature on the Letter of Assent agreeing to be bound by the CBA; and 4) declarations setting forth the specific contributions that Defendant failed to pay. Based on the record before it, the Court concludes that default judgment should be entered against Defendant.

**C.    Amount of Damages**

**1.    Section 1132(g)**

Once liability is established in a default situation, a plaintiff must then establish the extent of damages. *Geddes*, 559 F.2d at 560. Under ERISA, § 1132(g) provides for statutory damages where a multi-employer plan successfully sues under 29 U.S.C. § 1145 (providing that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collective bargaining agreement shall . . . make such contributions in accordance with the terms and conditions of such plan or such agreement"); 29 U.S.C. § 1132(d)(1) (giving multi-employer plan standing to sue for unpaid contributions in federal district court). A plan that obtains judgment in its favor in an action for unpaid contributions under § 1145 is entitled to:

(A) the unpaid contributions,

(B) interest on the unpaid contributions,

(C) an amount equal to the greater of –

(1) interest on the unpaid contributions, or

>> (2) liquidated damages provided for under the plan in an amount not in excess of 20 percent . . . of the amount determined by the court under subparagraph (A),
>
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
>
> (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2). Section 1132(g) further provides that where the interest rate is not specified in the collective agreement, the Court is to use the rate specified in 26 U.S.C. § 6621.

### 2. Contributions

Plaintiffs seek to recover underreported contributions for the period between April 9, 2008 and December 31, 2008, as determined by an auditor retained by Plaintiffs, in the following amounts: 1) $5,829.74 (April 2008); 2) $10,580.75 (May 2008); 3)$4,011.65 (June 2008); 4) $223.71 (July 2008); 5) $1,727.09 (August 2008); 6) $867.72 (October 2008); 7) $318.52 (November 2008); and 8) $787.46 (December 2008). Maraia Decl. ¶ 9 & Exs. 4 (Employer Compliance Report), 5 (chart summarizing amounts owed). In addition, Plaintiffs request the following amounts based on employer reports: 1) $4,966.62 (February 2009); 2) $1,062.06 (August 2009); 3) $4,436.12 (September 2009); 4) $4,412.88 (October 2009); 5) $1,063.75 (November 2009); and 6) $1,928.32 (December 2009). Maraia Decl., ¶ 5 & Ex. 3. In support of these amounts, Plaintiffs have submitted evidence, in the form of a declaration by Ms. Maraia, who is the Plan Manager for the Trust Funds, along with the report provided by the auditor documenting the amounts owed for 2008. Therefore, it is recommended that these amounts, which total $42,216.39, should be awarded in full.

### 3. Damages Sought By Plaintiffs

#### a. Liquidated Damages

Plaintiffs seek $3,618.78 in liquidated damages on the contributions listed above, calculated at 10%, as set forth in the June 19, 2007 notice. *See* Maraia decl., ¶¶ 5 & 9 (setting forth liquidated damages amounts for each of the months listed above). This amount should be awarded in full.

### b.     Prejudgment Interest

Plaintiffs seek $10,396.86 in prejudgment interest, calculated at the rate of 12%, as set forth in the June 19, 2007 notice. *See* Maraia Decl., Ex. 3. This amount should be awarded in full.[7]

### 4.     Attorneys' Fees and Costs

Having prevailed in this action for unpaid and late contributions, Plaintiffs are also entitled to reasonable attorneys' fees and costs of the action. 29 U.S.C. § 1132(g)(2)(D).

### a.     Attorneys' Fees

In this Circuit, the starting point for determining reasonable fees is the calculation of the "lodestar," which is obtained by multiplying the number of hours reasonably expended on litigation by a reasonable hourly rate. *See Jordan v. Multnomah County*, 815 F.2d 1258, 1262 (9th Cir. 1987). In calculating the lodestar, the Court must determine a reasonable rate and a reasonable number of hours for each attorney. *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986), *reh'g denied, amended on other grounds*, 808 F.2d 1373 (9th Cir. 1987).

Here, Plaintiffs seek $8,075.00 in attorneys' fees, for 33.3 hours of work, of which 4 hours of work was performed by a paralegal at a rate of $150.00 and the remainder was performed by an associate at a rate of $250/hour. *See* Declaration of Phil A. Thomas in Support of Plaintiffs' Application for Default ("Thomas Decl.") (including chart reflecting time billed and tasks completed). The Court finds that the rate charged for attorney time is reasonable; however, the rate sought for Plaintiff's paralegal time exceeds that which the Court generally awards paralegals. *See, e.g., ExperExchange, Inc. v. Doculex*, 2010 WL 1881484 (N.D.Cal., May 10, 2010) (finding paralegal rates of $125/hour and $115/hour to be reasonable). As Plaintiffs have presented no specific evidence in support of the rate charged for paralegal time, the Court reduces that rate to the standard rate of $125.00/hour.

---

[7]The Court notes that as to the 2009 contributions, interest was calculated to January 20, 2011 whereas interest on the 2008 contributions was calculated to February 18, 2011, that is, the date that Plaintiffs noticed the Motion for hearing. In doing so, Plaintiffs waived any prejudgment interest to which they would otherwise have been entitled on the 2009 contributions for the period between January 20, 2001 and February 18, 2011.

7

The Court also finds that the hours billed are somewhat excessive. In particular, Plaintiffs billed 13.9 hours for preparation of the default judgment motion, even though the case was fairly straightforward. *See e.g., Bay Area Painters v. Alta Specialty*, No. C06-06996 MJJ, 2008 WL 114931, at *6 (N.D.Cal. Jan.10, 2008) (reducing attorneys' fees awarded in straightforward ERISA case); *Board of Trustees of Bay Area Roofers v. Ace Roofing Co.,* 2005 WL 3497820 (N.D. Cal. June 16, 2005) (awarding fees for approximately five hours of attorney time in ERISA collection case similar to this case); *Northwest Administrators v. El Camino Paving*, 2009 WL 3111723 (N.D. Cal. Sept. 17, 2009) (awarding attorney's fees for four hours of attorney time at a rate of $180 per hour in ERISA default judgment collection case similar to this one). Therefore, the Court deducts 3 hours at the attorney rate of $250.00/hour. In addition, the Court deducts an additional hour of attorney time charged for the anticipated Motion hearing, which has been vacated. With these reductions, the Court recommends that Plaintiffs be awarded $6,976.00 in attorneys' fees.

### b. Costs

Plaintiffs seek $487.68 in costs, consisting of: 1) $350.00 for the Court's filing fee; 2) $61.18 for filing and return by the messenger service; and 3) 76.50 for service. Thomas Decl., ¶ 2(a). Under Civil Local Rule 54-3 ("Rule 54-3"), an award of costs may include the clerk's filing fee and fees for service of process "to extent reasonably required and actually incurred. Therefore, the filing and service fees are allowable. In addition, the fee for filing and return by a messenger is allowable under the broad cost provision in the Trust Agreements. *See* Maraia Decl., Ex. 1, § 3.2. Therefore, Plaintiffs' costs should be awarded in full.

## IV. CONCLUSION

For the reasons stated above, it is recommended that default judgment be GRANTED. Plaintiffs should be awarded $42,216.39 in unpaid contributions, $3,618.78 in liquidated damages, $10,396.86 in interest, $6,976.00 in attorneys' fees, and $487.68 in costs.

Dated: February 18, 2011

JOSEPH C. SPERO
United States Magistrate Judge

8